IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

NICHOLE R. KUNTZ,

        Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

No. C10-0059

RULING ON JUDICIAL REVIEW

_____

## TABLE OF CONTENTS

*I.*      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

*II.*     PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . .  2

*III.*    PRINCIPLES OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

*IV.*    FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5
      *A.*    Kuntz's Education and Employment Background . . . . . . . . . . . . .  5
      *B.*    Administrative Hearing Testimony . . . . . . . . . . . . . . . . . . . . . .  5
          *1.*    Kuntz's Testimony . . . . . . . . . . . . . . . . . . . . . . . . . . .  5
          *2.*    Vocational Expert Testimony . . . . . . . . . . . . . . . . . . . .  6
      *C.*    Kuntz's Medical History . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

*V.*     CONCLUSIONS OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12
      *A.*    ALJ's Disability Determination . . . . . . . . . . . . . . . . . . . . . . . .  12
      *B.*    Objections Raised By Claimant . . . . . . . . . . . . . . . . . . . . . . . .  14
          *1.*    Rebecca Heeren's Opinions . . . . . . . . . . . . . . . . . . . .  14
          *2.*    Robert Welshons' Opinions . . . . . . . . . . . . . . . . . . . .  16
          *3.*    Fully and Fairly Developed Record . . . . . . . . . . . . . . . .  18
          *4.*    Kuntz's Ability to Use Her Wrist and Hands . . . . . . . . . . .  22

*VI.*    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

*VII.*    ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Nichole R. Kuntz on April 20, 2010, requesting judicial review of the Social Security Commissioner's decision to deny her applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits. Kuntz asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits and SSI benefits. In the alternative, Kuntz requests the Court to remand this matter for further proceedings.

## II. PROCEDURAL BACKGROUND

On February 23, 2007, Kuntz applied for both disability insurance benefits and SSI benefits. In her applications, Kuntz alleged an inability to work since February 12, 2006 due to pinched nerves in her feet, bipolar disorder with obsessive compulsive thoughts, and possible postpartum depression. Kuntz's applications were denied on May 10, 2007. On December 5, 2007, her applications were denied on reconsideration. On December 28, 2007, Kuntz requested an administrative hearing before an Administrative Law Judge ("ALJ"). On July 16, 2008, Kuntz appeared via video conference with her attorney before ALJ Marilyn P. Hamilton for an administrative hearing. Kuntz and vocational expert Vanessa May testified at the hearing. In a decision dated October 1, 2008, the ALJ denied Kuntz's claims. The ALJ determined that Kuntz was not disabled and not entitled to disability insurance benefits or SSI benefits because she was functionally capable of performing her past relevant work as an assembler, escort driver, laundry worker, and office helper. Kuntz appealed the ALJ's decision. On February 20, 2010, the Appeals Council denied Kuntz's request for review. Consequently, the ALJ's October 1, 2008 decision was adopted as the Commissioner's final decision.

On April 20, 2010, Kuntz filed this action for judicial review. The Commissioner filed an Answer on September 13, 2010. On November 15, 2010, Kuntz filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that

2

she was not disabled and could perform her past relevant work as an assembler, escort driver, laundry worker, and office worker. On January 18, 2011, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On October 14, 2010, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

### III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the ALJ's decision if it is supported by substantial evidence on the record as a whole." *Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) (citation omitted). Evidence is "substantial evidence" if a reasonable person would find it adequate to support the ALJ's determination. *Id.* (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)); *see also Wildman v. Astrue*, 596 F.3d 959, 963-64 (8th Cir. 2010) ("'Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.' *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not

only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Moore v. Astrue*, 623 F.3d 599, 602 (8th Cir. 2010); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Casey v. Astrue*, 503 F.3d 687 (8th Cir. 2007), the Eighth Circuit further explained that a court "will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 691 (citations omitted). "A decision is not outside that 'zone of choice' simply because [a court] may have reached a different conclusion had [the court] been the fact finder in the first instance." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman*, 596 F.3d at 964 ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Kuntz's Education and Employment Background

Kuntz was born in 1978. She is a high school graduate. At the hearing, Kuntz testified that she was able to add, subtract, multiply, and divide. She also stated that she could read, write, speak, and understand the English language.

The record contains a detailed earnings report for Kuntz. The report covers Kuntz's employment history from 1995 to 2006. Between 1992 and 2006, Kuntz earned between $395.26 (1995) and $16,677.16 (1999). She earned $6,999.90 in 2006.

### B. Administrative Hearing Testimony

#### 1. Kuntz's Testimony

At the administrative hearing, the ALJ asked Kuntz why she believed she was unable to perform any of her past relevant work. Kuntz responded "[m]y mood swings. The problems that I [am] tired all the time and I break out crying for no reason all the time."[1] Kuntz also indicated that working is difficult because she suffers from pain in her arms and legs.

Next, the ALJ asked Kuntz to describe her typical day. Kuntz stated that she gets up around 7:30 a.m., and takes care of her 2.5 year old son. The ALJ also inquired as to the chores performs around the house:

Q:   Okay. Do you do any chores around the house?
A:   Other than what's super needed, I do the dishes maybe vacuum maybe once a week.
Q:   How about the laundry?
A:   Only when it's absolutely necessary. . . .
Q:   Do you have to do any yard work?
A:   No.
Q:   Okay. So you go out grocery shopping?
A:   Yes, once a month.

(Administrative Record at 17.) The ALJ further inquired as to Kuntz's functional abilities:

---

[1] *See* Administrative Record at 13.

Q: In an eight-hour day, how long could you stand?
A: Maybe like an hour or two.
Q: How long could you sit?
A: All day. . . .
Q: How much do you think you could lift at any one time?
A: Five pounds.

(Administrative Record at 18.) Lastly, the ALJ questioned Kuntz about her ability to get along with other people. Kuntz testified that "I'm constantly fighting with people. I just, I don't know. I don't get along with people very well anymore. I mean, I just broke up with my fiancé in February."[2] She indicated that her difficulties in getting along with others was related to her "disability."

## 2. *Vocational Expert Testimony*

At the hearing, the ALJ provided vocational expert Vanessa May with a hypothetical for an individual who:

> in general has the physical capacity to perform work at the medium level[.] . . . The person can lift or carry a maximum of 50 pounds occasionally, 20 pounds frequently, can stand/walk six hours out of an eight-hour workday, and has an unlimited ability to push or pull. The person can climb stairs frequently but can climb ropes, ladders, and scaffolds never, can occasionally balance, can frequently crouch, stoop, kneel, and crawl. The person can do only simple, routine tasks with occasional interaction with the public, coworkers, and supervisors, no use of independent judgment.

(Administrative Record at 32.) The vocational expert testified that under such limitations, Kuntz could perform her past relevant work as a cashier, assembler, escort driver, laundry worker, and office worker. The ALJ provided the vocational expert with a second hypothetical which was identical to the first hypothetical, except that the individual would be limited to the light level of work with occasional push/pull abilities on hand and foot

---

[2] *See* Administrative Record at 19.

controls. The vocational expert testified that under such limitations, Kuntz could perform the same past relevant work.

Kuntz's attorney also questioned the vocational expert. Kuntz's attorney inquired whether an individual would be employable if he or she had to take two to three unscheduled breaks lasting 15 to 30 minutes each workday, and would have to work at a slow pace for up to one-third of a typical workday. The vocational expert testified that under such limitations, Kuntz would not be employable on a competitive basis.

## C. Kuntz's Medical History

From January 19, 2007 to January 24, 2007, Kuntz was hospitalized for psychiatric concerns, including having thoughts of abandoning or hurting her infant son. Specifically, Kuntz informed doctors that "[f]or the past seven to eight months she had thoughts of hurting her son and when asked to elaborate she says that sometimes she will have thoughts of leaving him in a ditch or smothering him."[3] She also told doctors that she was depressed and irritable. Kuntz further stated that she had urges to commit suicide, but dismissed such urges because of her son. Doctors noted that Kuntz's psychiatric history included 3-4 hospitalizations as a child for suicide attempts and suicidal ideation. Her past suicide attempts included overdosing on medication and cutting her wrists. Doctors diagnosed Kuntz with major depressive disorder with postpartum onset and possible obsessive compulsive disorder. She was treated with medication. As a result of the treatment, Kuntz became "much less depressed and she told [her doctors] that the thoughts of harming her baby were gone."[4] On January 24, 2007, she was discharged from the hospital.

On April 10, 2007, Dr. David A. Christiansen, Ph.D., reviewed Kuntz's medical records and provided Disability Determination Services ("DDS") with a Psychiatric

---

[3] *See* Administrative Record at 320.

[4] *Id.* at 322.

Review Technique assessment for Kuntz. Dr. Christiansen diagnosed Kuntz with major depressive disorder with postpartum onset and possible obsessive compulsive disorder. Dr. Christiansen determined that Kuntz had the following limitations: mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. Dr. Christiansen noted that:

> [Kuntz] lives with her boyfriend. She takes care of her son and household chores that absolutely need to be done. She has little energy. She is touchy with other people, and argues a lot. She has trouble remembering things, concentrating, and completing tasks. She drives and shops, manages her money. . . .
>
> The medically determinable impairments are Depressive Disorder with Post-Partum Onset; and possible Obsessive Compulsive Disorder. Although [Kuntz] had a period of depression, this has improved. The medically determinable impairment is not severe at this time. . . .

(Administrative Record at 429.)

On April 25, 2007, Kuntz underwent a physical evaluation by Robert M. Welshons, PA-C. Kuntz's chief complaint was neuropathic pain in her feet. Specifically, Kuntz described her pain as an "intense sensation" of "pins and needles" to her feet. Welshons noted that her symptoms appeared at random, and sometimes lasted for only a few minutes, but usually lasted 30 to 60 minutes. Kuntz indicated that walking and standing tended to increase her symptoms. Upon examination, Welshons diagnosed Kuntz with paresthesias to the feet. Welshons opined that:

> [Kuntz] would be able to lift moderate weight with her upper extremities. She would have no problems with sitting for an extended period of time. She has no problems with speaking, hearing or handling objects. She has no restrictions to work environments regarding dust, fumes, temperatures or other hazards. Because of her complaints, she might have troubles with standing or walking for extended periods of time but may do reasonably well in a position allowing for some standing,

8

some walking, some moving about and some sitting throughout the day.

(Administrative Record at 435.)

On May 8, 2007, Dr. James D. Wilson, M.D., reviewed Kuntz's medical records and provided DDS with a physical residual functional capacity ("RFC") assessment for Kuntz. Dr. Wilson determined that Kuntz could: (1) occasionally lift and/or carry 50 pounds, (2) frequently lift and/or carry 25 pounds, (3) stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Wilson also determined that Kuntz could occasionally balance, and frequently climb ramps and stairs, stoop, kneel, crouch, and crawl. Dr. Wilson found no manipulative, visual, communicative, or environmental limitations. Dr. Wilson concluded that:

> [Kuntz] completes daily activities around her home such as dishes, laundry, vacuuming, taking out the garbage and caring for her child. She attends doctor's appointments, shops and prepares meals. Although she reports some limitations in her [] ability to complete daily activities, she does not attribute this to her physical condition other than daily fatigue. She does state she has a difficult time standing for long periods of time because her feet go numb. She takes [over-the-counter] medication for pain relief and topamax for migraines but reports these medications are not helpful.

(Administrative Record at 445.)

On June 28, 2007, Kuntz was evaluated by Dr. John E. Femino, M.D., for bilateral foot pain. Kuntz informed Dr. Femino that beginning in September 2006, she developed severe pain all day and all night in her feet. She indicated that walking and standing exacerbated her pain. Upon examination, Dr. Femino diagnosed bilateral foot pain that was possibly neuropathic.

On July 12, 2007, Rebecca Heeren, LMHC, Kuntz's treating mental health counselor, filled out a Mental Impairment Questionnaire at the request of Kuntz's attorney.

Heeren diagnosed Kuntz with major depressive disorder with postpartum onset and obsessive thoughts, and borderline Cluster B personality traits. Heeren noted that Kuntz's memory and concentration were impaired. Heeren also found that Kuntz was mildly anxious and had impaired insight and judgment. Heeren opined that Kuntz was seriously limited, but not precluded in the ability to: maintain attention for a two-hour segment, maintain regular attendance and be punctual within customary, usually strict tolerances, accept instructions and respond appropriately to criticism from supervisors, respond appropriately to changes in a routine work setting, and deal with stress of semi-skilled and skilled work. Heeren further opined that Kuntz was unable to meet competitive standards in the ability to: work in coordination with or proximity to others without being unduly distracted, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, deal with normal work stress, interact appropriately with the general public, maintain socially appropriate behavior, and use public transportation. Heeren noted that Kuntz's migraines and foot pain increase with stress and relationship conflicts. Heeren determined that Kuntz had the following limitations: moderate restriction of activities of daily living, extreme difficulties in maintaining social functioning, and marked difficulties in maintaining concentration, persistence, or pace. Heeren indicated that Kuntz would miss more than four days of work per month due to her impairments. Lastly, Heeren opined that Kuntz's prognosis was "guarded."

In August 2007, Kuntz had a follow-up evaluation for her foot pain with Dr. Femino. Upon examination, Dr. Femino determined that Kuntz had bilateral tarsal tunnel syndrome with the left foot being more symptomatic than the right foot. Dr. Femino also found that Kuntz had both proximal and tarsal tunnel entrapment symptoms in her left tibial nerve. Dr. Femino recommended surgery as treatment. On

September 19, 2007, Kuntz underwent a tarsal tunnel release with extension down into the medial and lateral plantar nerves and a high tibial nerve neurolysis in her left leg. In October, Dr. Femino found that Kuntz was "doing well" following surgery.

On October 24, 2007, Dr. Beverly Westra, Ph.D., reviewed Kuntz's medical records and provided DDS with a Psychiatric Review Technique and mental RFC assessment for Kuntz. On the Psychiatric Review Technique assessment, Dr. Westra diagnosed Kuntz with major depressive disorder with postpartum onset and obsessive thoughts, and borderline personality disorder. Dr. Westra determined that Kuntz had the following limitations: moderate restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Westra determined that Kuntz was moderately limited in her ability to: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, work in coordination with or proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and respond appropriately to changes in the work setting. Dr. Westra concluded that:

> [Kuntz's activities of daily living] indicate that [she] cares for her toddler son, does some housework and cooks simple foods. She can drive, shop and manage money but gets too stressed to handle a checkbook. She has a short attention span and some difficulty following instructions.
>
> [Kuntz's] impairments are severe, but not of listing level severity. She will have difficulty consistently completing

> detailed tasks, working closely with others, accepting feedback
> and adapting to change. She is capable of a range of simple,
> routine tasks in settings with minimal interaction with others.
> Allegations are credible to this extent.

(Administrative Record at 548.)

On February 21, 2008, Kuntz had a follow-up appoint with Dr. Femino. She reported that her left foot and leg pain had improved following surgery in September 2007. She told Dr. Femino that she felt she was "doing well." She indicated that her right foot and leg were causing her pain and requested surgery on the right side. Upon examination, Dr. Femino diagnosed Kuntz with right tarsal tunnel syndrome. On March 12, 2008, Kuntz underwent a right tarsal tunnel release.

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Kuntz is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The five steps an ALJ must consider are:

> (1) whether the claimant is currently engaged in any substantial
> gainful activity; (2) whether the claimant has a severe
> impairment; (3) whether the impairment meets or equals an
> impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1
> ("Appendix"); (4) whether the claimant can return to [his or]
> her past relevant work; and (5) whether the claimant can adjust
> to other work in the national economy.

*Moore*, 572 F.3d at 523 (citing 20 C.F.R. § 404.1520(a)(4)(i)-(v)). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575,

577 (8th Cir. 2006) (citing *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005), in turn quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)).

In order to establish a disability claim, "[t]he claimant bears the burden of demonstrating an inability to return to [his or] her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden of proof then shifts to the Commissioner to "show [that] the claimant is capable of performing other work." *Id.* In order to show that a claimant is capable of performing other work, the Commissioner must demonstrate that the claimant retains the residual functional capacity ("RFC") to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998) (citing *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. §§ 404.1545, 416.945. "'It is the ALJ's responsibility to determine [a] claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (quoting *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007)); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Kuntz had not engaged in substantial gainful activity since February 12, 2006. At the second step, the ALJ concluded from the medical evidence that Kuntz had the following severe combination of impairments: major depressive disorder, status post bilateral tarsal tunnel releases, bilateral cubital tunnel syndrome, status post left ulnar nerve transposition, and obesity. At the third step, the ALJ found that Kuntz did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Kuntz's RFC as follows:

[Kuntz] has the residual functional capacity to perform light work . . . except that the individual can only occasionally push and pull hand and foot controls. Additionally, she is limited to performing simple, routine tasks with occasional interaction with the public, coworkers, and supervisors. Moreover, the work should not require use of independent judgment.

(Administrative Record at 51.) Also at the fourth step, the ALJ determined that Kuntz was capable of performing her past work as an assembler, escort driver, laundry worker, and office helper. Therefore, the ALJ concluded that Kuntz was not disabled.

### B. Objections Raised By Claimant

Kuntz argues that the ALJ erred in four respects. First, Kuntz argues that the ALJ erred in discounting the opinions of her treating mental health counselor, Rebecca Heeren. Second, Kuntz argues that the ALJ failed to adequately consider the opinions of a consultative examiner, Robert Welshons. Third, Kuntz argues that the ALJ failed to fully and fairly develop the record with respect to her mental and physical limitations. Lastly, Kuntz argues that the ALJ failed to fully and fairly develop the record with regard to her ability to use her wrists and hands.

### 1.    Rebecca Heeren's Opinions

Kuntz argues that the ALJ failed to properly evaluate the opinions of her treating mental health counselor, Rebecca Heeren. Specifically, Kuntz argues that the ALJ's reasons for discounting Heeren's opinions are not supported by substantial evidence on the record. Kuntz maintains that this matter should be reversed and remanded for further consideration of Heeren's opinions.

Social Security Ruling 06-03p was issued on August 9, 2006 by the Social Security Administration ("SSA"). The purpose of the ruling was to clarify how the SSA considers opinions from sources not classified as "acceptable medical sources." *See Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (discussing SSR 06-03p). SSR 06-03p provides that when considering the opinion of a source that is classified as a "not acceptable medical source," such as a mental health therapist or licenced clinical social worker, "it would be

14

appropriate to consider such factors as the nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion." SSR 06-03p. Furthermore, in discussing SSR 06-03p, the Eighth Circuit Court of Appeals, in *Sloan*, pointed out:

> Information from these 'other sources' cannot establish the existence of a medically determinable impairment, according to SSR 06-3p. Instead, there must be evidence from an 'acceptable medical source' for this purpose. However, information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.

*Sloan*, 499 F.3d at 888 (quoting SSR 06-03p). In determining the weight afforded to "other medical evidence," an "ALJ has more discretion and is permitted to consider any inconsistencies found within the record." *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (citation omitted).

In her decision, the ALJ properly considered the opinions of Heeren. Specifically, the ALJ determined that:

> A licensed mental health counselor expressed an opinion in July 2007 concerning [Kuntz's] functional abilities. The undersigned attributes little weight to the opinion in part for some of the reasons indicated by the State Agency reviewing psychologist: '[Kuntz's] therapist completed a checklist indicating she is unable to meet competitive standards in several social and cognitive areas. However this opinion is inconsistent with treatment notes and GAFs of 60, and is not offered by an acceptable source[.]' The undersigned agrees the social worker's opinion is inconsistent with treatment notes and GAF scores of 60 assigned by [Kuntz's] psychiatrist, which indicate functioning at the high end of moderate symptoms; and finds the social worker's opinion is also inconsistent with other evidence in the record as a whole.

> Since the social worker is not an acceptable medical source,
> her opinion is not entitled to controlling weight, but has been
> given some weight as to the severity of [Kuntz's] mental
> impairment and how it affect [*sic*] [Kuntz's] ability to function.

(Administrative Record at 55.)

Having reviewed the entire record, the Court finds that the ALJ properly considered and weighed the opinion evidence provided by Heeren. The Court also finds that the ALJ provided "good reasons" for rejecting Heeren's opinions. *See* 20 C.F.R. § 404.1527(d)(2); *Strongson*, 361 F.3d at 1070; *Edwards*, 314 F.3d at 967. Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 2. *Robert Welshons' Opinions*

Kuntz argues that the ALJ failed to properly evaluate the opinions of a consultative examiner, Robert Welshons. Kuntz maintains that the ALJ's reasons for discounting Welshons' opinions are not supported by substantial evidence on the record, particularly with regard to Welshons' opinion that she would have difficulty standing and walking for extended periods of time. Kuntz concludes that this matter should be reversed and remanded for further consideration of Welshons' opinions.

An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion is not from a treating source, then the ALJ considers the following factors for determining the weight to be given to the non-treating medical opinion: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(d)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the

government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)).

In her decision, the ALJ thoroughly addressed and considered both Welshons' opinions and Kuntz's alleged limitations due to problems with her feet. Specifically, the ALJ determined that:

> At an examination arranged by the State Agency in late April 2007,[5] [Kuntz] alleged foot symptoms, making allegations concerning the nature, location, onset, duration and frequency of symptoms as well precipitating and aggravating factors. Interestingly, [Kuntz's] alleged symptoms appeared and disappeared and that she was not symptomatic as of the time of the examination. Nevertheless, the examination was essentially normal/negative except for some loss of sensation which did not conform to a known dermatomal distribution. The doctor noted [Kuntz] had not maximized treatment. The doctor was of the opinion [Kuntz] would have no problem sitting or lifting moderate weight with her upper extremities; and could stand with the ability to change positions. The doctor's opinions as to sitting and lifting have been given a good deal of weight as supported and consistent with other evidence in the record. The opinion as to standing is not given great weight, only such weight as consistent with the functional capacity assigned in light of other inconsistencies in the record as a whole not available to the doctor. The doctor's opinion is consistent with a significant remaining functional capacity to perform other work, i.e., the doctor's opinion is not consistent with inability to do any/all work. The inconsistencies undermine [] giving full credit to [Kuntz's] allegations concerning the existence, persistence and intensity of symptoms and functional limitations of her feet.
>
> [Kuntz] underwent a tarsal tunnel release on the left, which she told her doctor gave her 'very good pain relief.' On March 12, 2008, [Kuntz] underwent a tarsal tunnel release on the right. By April 3, 2008, three weeks later, [Kuntz] admitted

---

[5] This examination was performed by Welshons. *See* Administrative Record at 434-36.

her nerve symptoms had much improved to the degree that she had taken off her cast with a sharp knife prior to returning to the doctor. [Kuntz] was to start physical therapy and gait training. The medical record establishes improvement and a large degree of resolution of symptoms. The inconsistencies undermine giving full credit to [Kuntz's] allegations concerning the existence, persistence and intensity of symptoms and functional limitations of her feet.

(Administrative Record at 53.)

Having reviewed the entire record, the Court finds that the ALJ properly considered and weighed the opinion evidence provided by Welshons. The Court also finds that the ALJ provided "good reasons" for rejecting Welshons' opinions with regard to limitations on Kuntz's ability to stand or walk. *See* 20 C.F.R. § 404.1527(d)(2); *Strongson*, 361 F.3d at 1070; *Edwards*, 314 F.3d at 967. Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 3.    *Fully and Fairly Developed Record*

Kuntz argues that the ALJ failed to fully and fairly develop the record because the ALJ failed to request a consultative physical or psychological examination, including record review, evaluation, and statement of work-related limitations. Kuntz also argues that the ALJ failed to obtain missing medical records. Kuntz maintains that this matter should be remanded to further development of the record.

The Court will first address the issue of missing medical records. Kuntz claims that:

At the hearing, the ALJ noted that, while the exhibit file included medication reviews, the file did not contain Ms. Heeren's counseling notes. Counsel agreed to try to obtain those records and submit them in thirty days. It is not clear what happened after the hearing, but those records are not in the file.

*See* Kuntz's Brief (docket number 13) at 23. A case may be remanded for additional evidence "'but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" *Hepp v. Astrue*, 511 F.3d 798, 808 (8th Cir. 2008) (quoting 42 U.S.C. § 405(g)).

At the outset, the Court notes that two progress notes attributed to Heeren are contained in the record. *See* Administrative Record at 474-75. Additionally there are multiple progress notes from Heeren's colleagues at the Mental Health Clinic of Tama County. *See* Administrative Record at 353-54, 481, 590 (progress notes from psychiatrist Dr. Richard Hauser, M.D.); 476-80, 579-89 (progress notes from psychiatrist Dr. Laura Van Cleve, D.O.). Furthermore, Kuntz offers no evidence as to the materiality of the alleged missing medical records or an explanation of good cause for why such evidence was not submitted to the ALJ before the administrative record was closed. Significantly, at the administrative hearing, the ALJ and Kuntz's attorney engaged in the following colloquy:

| | |
|---|---|
| ALJ: | I believe it was a questionnaire completed -- |
| ATTY: | Therapist -- |
| ALJ: | -- a questionnaire completed by Rebecca [Heeren]. |
| ATTY: | Yeah. |
| CLMT: | Yeah, that's my therapist. |
| ALJ: | July 2007, but I didn't see other records from, along those lines. Counsel, if, if, is it possible for you to try to obtain these? |
| ATTY: | Oh, yeah, definitely. We'll try and get them for sure. |
| ALJ: | All right. How long of time do you think it would take? |
| ATTY: | Oh, I mean, we can fax them today and ask them that. Well, I guess, it depends on them. I'd say 30 days. |
| ALJ: | All right. I can hold the record open for 30 days. If not obtained within 30 days, then I |

> will go ahead and make a decision based on the
> evidence of record today.
>
> ATTY: Okay.
>
> ALJ: Either once I receive those records of if I don't
> receive them at the end of 30 days, then I will
> make a decision. I will issue a written decision
> with findings of facts and conclusions of law and
> the record will remain open for, for that 30 days
> as requested.

(Administrative Record at 35-36.) It is clear from the foregoing conversation, that the ALJ allowed the record to remain open for 30 days to allow Kuntz's attorney the opportunity to obtain medical records from Heeren to be entered into the administrative record. Apparently, Kuntz's attorney failed to obtain the additional records. Kuntz offers no reason or explanation for her attorney's failure to obtain the additional records from Heeren.

Considering all the facts and circumstances, the Court finds that good cause does not exist for the failure to include any alleged missing medical records, whether such records are material or not, in the final administrative record. *See Hepp*, 511 F.3d at 808 ("Good cause does not exist when the claimant had the opportunity to obtain the new evidence before the administrative record closed but failed to do so without providing a sufficient explanation.") (citing *Hinchey v. Shalala*, 29 F.3d 428, 433 (8th Cir. 1994)). Accordingly, the Court finds that Kuntz's argument is without merit, and therefore, remand is unnecessary on the issue of alleged missing medical records.

Turning to Kuntz's claim that the ALJ failed to properly develop the record with regard to ordering a consultative physical or psychological examination, including record review, evaluation, and statement of work-related limitations, the Court bears in mind that an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that

"'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser*, 545 F.3d at 639.

Additionally, an ALJ is not required to "seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped." *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) (citation omitted). An ALJ should only contact a treating physician "if the doctor's records are 'inadequate for us to determine whether the claimant is disabled' such as 'when the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.'" *Goff*, 421 F.3d at 791 (citing 20 C.F.R. §§ 404.1512(e) and 416.912(e)). An ALJ may also order medical examinations and tests when the medical records presented to him or her constitute insufficient medical evidence to determine whether the claimant is disabled. *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994) (citation omitted); *see also* 20 C.F.R. § 404.1519a(a)(1) ("The decision to purchase a consultative examination . . . will be made after we have given full consideration to whether the additional information needed is readily available from the records of your medical sources."). Additionally, 20 C.F.R. § 404.1519a(b) provides that "[a] consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on . . . [the] claim." *Id.* For example, a consultative examination should be purchased when "[t]he additional evidence needed is not contained in the records of your medical sources." 20 C.F.R. § 404.1519a(b)(1).

Here, the ALJ fully considered the consultative examination of Welshons, the opinions of Heeren, including her determinations on Kuntz's work-related limitations, the opinions of multiple treating sources (both physical and psychological), and the opinions

of three consultative doctors who provided DDS with one physical RFC determination and two mental RFC determinations. The Court finds such medical evidence adequate for making a disability determination. No crucial issues were undeveloped and the medical evidence was based on medically acceptable clinical and laboratory diagnostic techniques. Therefore, the ALJ did not err by not ordering any further consultative examinations for Kuntz. *See Goff*, 421 F.3d at 791 (an ALJ should contact a treating physician for further information when "the doctor's records are 'inadequate for us to determine whether the claimant is disabled' such as 'when the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.'") (quotation omitted); *Stormo*, 377 F.3d at 806 (an ALJ is not required to "seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped"); *Barrett*, 38 F.3d at 1023 (an ALJ may order a medical examination when the medical records presented to him or her constitute insufficient medical evidence to determine whether the claimant is disabled). Accordingly, the Court determines that the ALJ fully and fairly developed the record as to the medical evidence in this case. *See Cox*, 495 F.3d at 618.

### 4. *Kuntz's Ability to Use Her Wrist and Hands*

Kuntz argues that the ALJ failed to fully and fairly develop the record with regard to her ability to use her wrists and hands. Kuntz maintains that this matter should be remanded for further development of the record on this issue. The Commissioner argues that the ALJ properly evaluated Kuntz's ability to use her wrists and hands, and the ALJ's decision is supported by substantial evidence on the record as a whole.

An ALJ has a duty to develop the record fully and fairly. *Cox*, 495 F.3d at 618; *Sneed*, 360 F.3d at 838; *Wilcutts*, 143 F.3d at 1137. Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith*,

435 F.3d at 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser*, 545 F.3d at 639.

In her decision, the ALJ addressed Kuntz's ability to use her wrists and hands. Specifically, the ALJ determined that:

> In February 2008 [Kuntz] complained of a one-month history of tingling and numbness of the ring and little finger in her hands bilaterally, left greater than right. She underwent a left ulnar nerve transposition in May 2008. By early June 2008, [Kuntz] admitted her pain had been improving with medication . . . and occurred only at night. [Kuntz] had a full flexion and extension of her elbow. There was no neurovascular compromise noted. . . . The admission of improvement, negative objective findings and stated limitation for only 3-4 weeks are consistent with a significant improvement within 12 months of the onset of her symptoms for her left side.
>
> By late June 2008, [Kuntz] maintained she continued to be greatly functionally limited and had extreme pain, at a level 10. However, [Kuntz] inconsistently indicated she was mostly satisfied with the results of treatment, and that her symptoms had been 'mostly relieved.' [Kuntz] alleged she had severe left arm, shoulder or hand pain in the daytime. This is not consistent to her statement earlier in the month when she admitted that she really only had pain at night. The inconsistencies suggest that [Kuntz] may have exaggerated her level of alleged pain and undermine giving full credit to [Kuntz's] allegations concerning the existence, persistence and intensity of symptoms and functional limitations in her left hand.
>
> On June 2, 2008, [Kuntz] told her doctor that she had right-sided symptoms, but denied numbness and did not describe such serious symptoms to the examining doctor. On June 30, 2008, [Kuntz] completed a questionnaire and claimed to have moderate to severe numbness, tingling and pain in her right arm, shoulder or hand. However, she admitted she had no

23

difficulty writing with her right hand, no difficulty turning a key with her right hand, no difficulty picking up a coin, and only mild difficulty turning a door knob. [Kuntz] maintained she had mild difficulty holding or gripping various objects. . . .

The record establishes substantial improvement with medical treatment in [Kuntz's] left hand function. Although [Kuntz] testified at the hearing that she had a 5 pound lifting limitation on the left, due to surgery, the medical record establishes the doctor imposed that limitation for only three to four weeks. Further, [Kuntz's] failure to have surgery yet on the less symptomatic right hand, even though she is right-handed, is consistent with her report in early June 2008 that she can do a wide range of activities with her right hand. The inconsistencies undermine the undersigned's willingness to fully credit [Kuntz's] allegations concerning the existence, persistence and intensity of symptoms and functional limitations in her right hand.

(Administrative Record at 52-53.)

It is clear from the ALJ's decision that she thoroughly considered and addressed Kuntz's ability to use her wrists and hands. Accordingly, the Court determines that the ALJ fully and fairly developed the record as to Kuntz's ability to use her wrists and hands. *See Cox*, 495 F.3d at 618. Furthermore, even if inconsistent conclusions could be drawn on this issue, the Court upholds the determination of the ALJ because it is supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

## VI. CONCLUSION

The Court finds that the ALJ properly considered and weighed the opinion evidence provided by Heeren and Welshons. The Court also finds that the ALJ fully and fairly developed the record both with regard to the medical evidence in the case generally, and with regard to Kuntz's ability to use her wrists and hands specifically. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VII. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

1.  The final decision of the Commissioner of Social Security is **AFFIRMED**;

2.  Plaintiff's Complaint (docket number 3) is **DISMISSED** with prejudice; and

3.  The Clerk of Court is directed to enter judgment accordingly.

DATED this _20th_ day of May, 2011.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA